Herschel S. CRAIN, Jr. Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 29S00–9803–CR–180.

Supreme Court of Indiana.

Oct. 20, 2000.

Eric J. Benner, Richards, Boje, Pickering, Benner & Becker, Noblesville, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, IN, Attorney for Appellee.

SULLIVAN, Justice.

Defendant Herschel Crain was convicted of beating and killing his wife after confessing that he killed her two years earlier and then buried her body. He appeals claiming that there was insufficient evidence to support his murder conviction. He also challenges several rulings by the trial court, including one that allowed the prosecutor to use the victim's skull as evidence, in addition to challenging the severity of his sentence. Finding the evidence sufficient to support his convictions and the trial court's rulings otherwise proper, we affirm the convictions. We remand this case to the trial court for reconsideration of the sentence in light of the statute then in effect.

We have jurisdiction over this direct appeal because the longest single sentence exceeds 50 years. Ind. Const. art. VII, § 4; Ind. Appellate Rule 4(A)(7).

*Background*

The facts most favorable to the verdict show that near the end of October 1994, Defendant Herschel Crain and his wife, Dorothea ("Dot") Crain, were arguing in Defendant's room in the Carmel Motel. During this argument, Defendant struck Dot, breaking several of her ribs and causing her to fall down and crack her skull. Defendant left his injured wife in this motel room, returning several days later to find her dead. He then buried her body behind the motel, and denied any involvement in her disappearance when questioned by police about the matter.

Over two years later on January 4, 1997, Defendant was arrested in Kokomo, Indiana, on unrelated criminal charges. During his incarceration at the Howard County Criminal Justice Center, Defendant admitted responsibility for his wife's death in a taped interview to Kokomo Detective Douglas Mason, but he claimed "it was accidental." (R. at 1039, 1041, 1051, 1052). Soon thereafter, Defendant was transported to Carmel where he led Carmel Detective Charlie Harting to an area behind the Carmel Motel; there, police officials discovered and removed Dot Crain's body. An autopsy and forensic tests performed on the body indicated that Dot's death was a homicide.

The State charged Defendant with Murder,[1] Aggravated Battery, a Class B felony,[2] and with being a habitual offender.[3] A jury found Defendant guilty on all counts. The trial court merged the aggravated battery conviction with the murder conviction and sentenced Defendant to 60 years for the murder and 30 years for the habitual offender adjudication for a total sentence of 90 years. Defendant challenges the sufficiency of the evidence supporting his conviction in addition to several procedural and evidentiary rulings by the trial court. We review Defendant's claims in the order presented in his brief and will recite additional facts as needed.

1. Ind.Code § 35–42–1–1 (1993).

2. *Id.* § 35–42–2–1.5.

3. *Id.* § 35–50–2–8 (Supp.1994).

## I

Defendant first contends that the trial court committed reversible error by denying his motion to suppress his statements to Detectives Mason and Harting. He argues these statements should have been suppressed because he did not waive his *Miranda* rights and his confession was not made voluntarily.

■ Several standards govern our review. First, the State bears "the burden of proving beyond a reasonable doubt that the defendant voluntarily and intelligently waived his rights, and that the defendant's confession was voluntarily given." *Schmitt v. State,* 730 N.E.2d 147, 148 (Ind. 2000) (citing *Berry v. State,* 703 N.E.2d 154 (Ind.1998) (citing in turn *Owens v. State,* 427 N.E.2d 880 (Ind.1981))). Second, where that standard has been met, "[t]he decision whether to admit a confession is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion." *Jones v. State,* 655 N.E.2d 49, 56 (Ind.1995), *reh'g denied.* And third, when reviewing a challenge to the trial court's decision to admit a confession, we do not reweigh the evidence but instead examine the record for substantial, probative evidence of voluntariness. *Carter v. State,* 730 N.E.2d 155, 157 (Ind. 2000).

### A

■ We first address whether Defendant waived his *Miranda* rights. A waiver of one's *Miranda* rights occurs when a defendant, after being advised of those rights and acknowledging an understanding of them, proceeds to make a statement without taking advantage of those rights. *See Speed v. State,* 500 N.E.2d 186, 188 (Ind.1986). In addition to the required *Miranda* advisement, a defendant's self-incriminating statement must also be voluntarily given. *See Gregory v. State,* 540 N.E.2d 585, 592 (Ind.1989); *see also Dick-*

*erson v. United States,* —— U.S. ——, 120 S.Ct. 2326, 2336, 147 L.Ed.2d 405 (2000) ("The requirement that *Miranda* warnings be given does not, of course, dispense with the voluntariness inquiry."). In judging the voluntariness of a defendant's waiver of rights, we will look to the totality of the circumstances, *see Allen v. State,* 686 N.E.2d 760, 770 (Ind.1997), *cert. denied,* 525 U.S. 1073, 119 S.Ct. 807, 142 L.Ed.2d 667 (1999), to ensure that a defendant's self-incriminating statement was not induced by violence, threats, or other improper influences that overcame the defendant's free will, *see Wilcoxen v. State,* 619 N.E.2d 574, 577 (Ind.1993).

■ Here, the evidence supports the trial court's finding that the State proved beyond a reasonable doubt that Defendant was fully advised of his *Miranda* rights and that he voluntarily waived those rights. During Defendant's incarceration at the Howard County Criminal Justice Center, Detective Mason overheard Defendant telling jail officials that he was trying to speak to someone about a murder. Detective Mason offered to speak with Defendant and he accepted.

At the suppression hearing, the State produced a written transcript of Defendant's statement. Detective Mason began the interview by reading Defendant his *Miranda* rights and then asking, "Do you understand these rights?" (R. at 1039.) Defendant answered, "Yes." (*Id.*) And although he initially demanded to speak to Detective Harting of the Carmel Police Department,[4] Defendant soon described to Detective Mason how he accidentally killed his wife in his motel room, during the course of an argument where "[s]he hit [him] with a lamp and [he] popped her in the nose and she died." (R. at 1049.) Defendant then admitted that he dug a hole behind the motel and "threw her ass in it." (*Id.*)

---

4. Defendant: "[T]ake me to the Hamilton County Jail ... and I'll tell Charlie and them. I'll cop out to Hank or Charlie, or somebody, you know, but you gotta get me the fuck up out of this [Howard County] jail." (R. at 1041.)

After giving this statement to Detective Mason at approximately 1:30 a.m. on January 4, 1997, Defendant was immediately transported to Carmel to assist authorities in searching the grounds around the motel. When Defendant arrived in Carmel an hour or so later, his request to speak with Detective Harting was granted. Detective Harting entered the Kokomo squad car where Defendant was seated.

Detective Harting testified during the suppression hearing that he first Mirandized Defendant before asking him to show the police officials "where he had buried Dorothea." (R. at 1071.) Defendant then responded, "[L]et's do it." (*Id.*) After walking the grounds around the motel with Detective Harting and another police officer and identifying where he buried his wife, Defendant was transported back to the Howard County Jail in Kokomo. The next day, Defendant reviewed and signed the transcript of his jailhouse statement, individually initialing each page, including the first page that contained Detective Mason's transcribed verbal *Miranda* warning.

As noted by Judge Barr in ruling on Defendant's motion to suppress, the State established that *Miranda* rights were read to Defendant on at least two occasions in addition to his acknowledging the initial advisement of rights when he initialed and signed the Kokomo interview transcript. After reviewing the testimony at the suppression hearing and all materials presented therein, this Court finds no evidence of violence, threats, promises, or improper influence. The trial court did not abuse its discretion in denying Defendant's motion to suppress, as there was substantial and probative evidence sufficient to establish voluntariness beyond a reasonable doubt.

### B

Defendant also argues he was intoxicated when he gave his statements in addition to being incoherent and not in control of his faculties due to the stress and anxiety of confessing. He maintains that under this distraught state, he was "unconscious as to what he was saying," and that therefore, the trial court abused its discretion in finding his confession was made voluntarily. Appellant's Br. at 23.

 Coercive police activity is a necessary prerequisite to finding a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment. *Light v. State,* 547 N.E.2d 1073, 1077 (Ind.1989) (citing *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)), *reh'g denied.* A confession is voluntary if, in light of the totality of the circumstances, the confession is the product of a rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will. *United States v. Dillon,* 150 F.3d 754, 757 (7th Cir.1998). The critical inquiry is whether the defendant's statements were induced by violence, threats, promises or other improper influence. *Page v. State,* 689 N.E.2d 707, 710 (Ind.1997).

 Defendant claims that "both of his confessions were induced wholly by his voluminous alcohol intake," rendering his confessions involuntary. Appellant's Br. at 23. He also argues that he was placed on suicide watch following his confession which proves his incoherent state. Intoxication may be a factor in determining voluntariness. *Brewer v. State,* 646 N.E.2d 1382, 1385 (Ind.1995) (citing *Pettiford v. State,* 619 N.E.2d 925 (Ind.1993) (citing in turn *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986))). However, as we discussed in Part I–A, there is no evidence of violence, threats, promises, or improper influence in this case.

We find that the trial court did not abuse its discretion in denying Defendant's motion to suppress because the record contains substantial probative evidence sufficient to establish beyond a reasonable doubt that he was able to appreciate his *Miranda* rights and give the voluntary

confessions, and there is no evidence of improper police influence or coercion in obtaining the confessions.

## II

Defendant maintains that the trial court committed reversible error by not instructing the jury "regarding the voluntariness of [his] confessions," that is, how much weight it should give to his confessions. Appellant's Br. at 24.

■■■ Defendant neither tendered an instruction on voluntariness nor did he object to the trial court's failure to give such an instruction. Thus, he has waived the issue on appeal. *Brown v. State,* 691 N.E.2d 438, 444 (Ind.1998); *see also* Ind. Crim.Rule 8(B) ("No error with respect to the giving of instructions shall be available as a cause for new trial or on appeal, except upon the specific objections made as above required.").

■■■ Furthermore, factors such as intoxication and mental impairment do not render a self-incriminating statement involuntary *per se* and generally go to the weight that should be accorded the statement and not to its admissibility. *See Battles v. State,* 688 N.E.2d 1230, 1233 (Ind.1997) (collecting cases). It is the role of the trial court—not the jury—to determine whether a statement made by a defendant is voluntary and therefore admissible. *See id.; Coates v.. State,* 534 N.E.2d 1087, 1093 (Ind.1989). After a statement is admitted into evidence, it then becomes the duty of the jury to evaluate the credibility of the statement and to decide how much weight to give it. *See Battles,* 688 N.E.2d at 1233.

■■■ Here, the trial court had already considered Defendant's intoxication and mental state and determined his statements were admissible as "voluntarily and intelligently waive[d]." (R. at 1079.) The issue before the jury was therefore credibility, not voluntariness. And we find that the trial court's preliminary instruction re-garding witness credibility adequately addressed this issue.

## III

Defendant maintains that the trial court committed reversible error by denying Defendant's motion for change of venue based on pretrial publicity.

■■■ A trial court's denial of a change of venue motion will be reversed only for an abuse of discretion. *See Elsten v. State,* 698 N.E.2d 292, 294 (Ind.1998). Showing potential juror exposure to press coverage is not enough. *See id.* (citing *Barnes v. State,* 693 N.E.2d 520, 524 (Ind. 1998)). Instead, the defendant "must demonstrate that the jurors were unable to disregard preconceived notions of guilt and render a verdict based on the evidence." *Id.*

■■■ During the *voir dire* of the potential jurors in this case, the trial court discovered that a potential juror had been inadvertently exposed to an article concerning Defendant's case while perusing a magazine, *Indianapolis Monthly,* in the waiting room. See discussion *infra* Part IV. The trial court then conducted and recorded a partial *voir dire* outside the presence of the venire panel, during which the potential juror testified that he did not think any other prospective juror saw the article, and that even after seeing the article, he could still judge the case impartially.

■■■ While we are able to review the transcript of the aforementioned partial *voir dire* and find no evidence of prejudice to Defendant, the record before us does not contain a transcript of the full individual *voir dire.* Defendant acknowledges in his brief, however, that each juror ultimately selected to serve in this case did take an "oath to be fair and impartial" and that the juror who was exposed to the *Indianapolis Monthly* article concerning Defendant's case "was not selected as a juror." Appellant's Br. at 27–8. An abuse of discretion does not occur where *voir*

*dire* reveals that the seated panel was able to set aside preconceived notions of guilt and render a verdict based solely on the evidence. *See Lindsey v. State,* 485 N.E.2d 102, 106 (Ind.1985).

 Furthermore, Defendant has failed to direct us elsewhere in the record to establish that the seated jurors were unable to be impartial due to the pretrial media coverage. As we have previously held, this inability to show prejudice is fatal to a defendant's claim. *See, e.g., Barnes,* 693 N.E.2d at 524–25; *White v. State,* 687 N.E.2d 178, 179 (Ind.1997); *Owens v. State,* 659 N.E.2d 466, 475 (Ind. 1995). Defendant has failed to demonstrate an abuse of the trial court's discretion in denying his motion for change of venue.

## IV

In a related argument, Defendant maintains that the trial court should have immediately dismissed the entire jury venire panel upon realization that the previously mentioned magazine was found in the jury waiting room.

 A trial court's decision whether or not to dismiss a jury panel will be reviewed for an abuse of discretion. *See Thompson v. State,* 492 N.E.2d 264, 272 (Ind.1986), *reh'g denied; Perry v. State,* 471 N.E.2d 270, 275–76 (Ind.1984). Only when evidence is presented which establishes the jury's inability to impartially try the case, will a dismissal be warranted. *See Perry,* 471 N.E.2d at 275–76; *cf. May v. State,* 716 N.E.2d 419 (Ind.1999) (reversing the trial court for an abuse of discretion for not replacing a juror who extended a personal invitation to his home to a key

prosecution witness during a lunch hour trial recess).

 We first note that there is no showing in the record that Defendant asked the trial court to dismiss the entire jury venire panel. As such, this issue is effectively waived for appeal. Furthermore, as set forth in Part III, *supra,* a transcript of the individual *voir dire* was not made part of the record, so we are unable to verify, for example, whether the remaining members of the jury panel were polled to ensure that no one else had seen the magazine article or discussed its contents.[5] *See, e.g., Thompson,* 492 N.E.2d at 272–73; *Lindsey v. State,* 260 Ind. 351, 295 N.E.2d 819 (1973). Moreover, we are aware of no authority—and Defendant provides none—establishing a rule of prejudice *per se* because a jury panel had possible access to an incriminating article within a magazine. We have not even been provided with the text of the *Indianapolis Monthly* article. In any event, Defendant has failed to show that he was prejudiced. The trial court did not abuse its discretion in not dismissing the entire jury panel.

## V

Defendant contends that he was unduly prejudiced when the trial court permitted the State to introduce the victim's skull into evidence as a visual aid to supplement its expert witness testimony. During the State's case-in-chief, the jury members were given the opportunity to come forward and examine the skull, which was presented in three pieces[6] on a table in front of the jury box.

Defendant acknowledges the skull's relevance given that "the victim evidently died

5. Defendant does not make this specific argument on appeal. Nevertheless, we did find Defendant's *Motion Regarding Voir Dire* in the record in which he requested "that the jury venire be polled as a group as to whether or not they know about [ ] the facts or allegations surrounding this case." (R. at 144.) Our review of the record, however, leaves us uncertain as to whether the trial court granted or denied the Defendant's motion or *sua sponte* polled the jury due to publicity surrounding the case.

6. As best as we can tell, the skull was in pieces due to decay and/or procedures performed during autopsy.

due to a fracture of the skull." Appellant's Br. at 30. However, he claims that any relevance is substantially outweighed by the prejudicial effect of the victim's skull in violation of Indiana Evidence Rule 403,[7] and moreover, that the trial court abused its discretion in not directing the State to use "a model of the human skull or pictures of the victim's skull." Appellant's Br. at 32.

▮ At first blush, we find it a bit unsettling that the trial court would allow the prosecution to use the *actual* skull of the victim to supplement its expert testimony. In our view, other conventional alternatives—such as high resolution photographs, video, and charts—could no doubt have been used to assist the State's expert witnesses in "demonstrat[ing] various healing stages of the injuries, colorations of the bone, and staining in the skull." Appellee's Br. at 11 (citing R. at 883–906, 963–69).[8]

Nevertheless, foreign jurisdictions have squarely addressed the use of a victim's skulls as evidence in a trial and found—under similar circumstances—that the probative value outweighed any resultant Rule 403 prejudicial effect. *See State v. Pike*, 978 S.W.2d 904, 924–25 (Tenn.1998) ("In this case, the skull had been thoroughly cleansed and was no more prejudicial or gruesome than a model diagram would have been."), *cert. denied*, 526 U.S. 1147, 119 S.Ct. 2025, 143 L.Ed.2d 1036 (1999); *Hilbish v. State*, 891 P.2d 841, 849 (Alaska Ct.App.1995) (The trial court did not abuse its discretion when it admitted into evidence the victim's skull, "which had been cleaned of all tissue and was contained in a sealed and odorless plastic bag" and was utilized by the State to "assist the jury in understanding the precise location of the gunshot wounds to [the victim's]

head," where the skull "was not particularly gruesome—arguably less gruesome than available photographs might have been."). On the other hand, at least one other appellate court found an abuse of discretion when a trial court admitted into evidence a *picture* of a skull that was particularly gruesome and only marginally relevant. *See McNeal v. State*, 551 So.2d 151, 159 (Miss.1989) (disagreeing with the "state's position ... that all of the photographs were needed in order to prove the corpus delicti" and remarking that "the state could have shown the angle and entry of the bullet wound without the full-color, close-up view of the decomposed, maggot-infested skull").

In this case, the skull was neither particularly gruesome nor ominous as it lay in three separate pieces, appearing as if it was found on an archeological dig. Furthermore, it was relevant given Defendant's claim of accidental death and the State's corresponding need to show those injuries occurring at the time of death and/or the absence of injuries. (R. at 765.) After carefully balancing the probative value against potential prejudicial impact, the trial court ruled the evidence admissible. While our review of the record leads us to believe that the State could have just as easily supplemented its witness testimony with other conventional exhibits, we are persuaded that in this case the trial court did not abuse its discretion in admitting the skull pieces into evidence.

## VI

### A

▮ Defendant contends that the trial court committed reversible error in admitting evidence of Defendant's prior bad acts in violation of Indiana Evidence Rules

---

7. Rule 403 provides in part that "relevant[ ] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."

8. Not surprisingly, the only relevant Indiana case law we found analyzes claims arising

from the prejudicial impact associated with photographs of skulls. *See, e.g., Coy v. State*, 720 N.E.2d 370, 375–76 (Ind.1999) (Ind.Evid. Rule 403 claim); *Willey v. State*, 712 N.E.2d 434, (Ind.1999) (fundamental error claim).

404(b) and 403. Prior to trial, Defendant sought a motion *in limine*, which the trial judge granted in part and denied in part, barring the State from introducing evidence that Defendant had two previous convictions for battering his wife as well as similar charges pending against him at the time of her murder. During trial, Defendant renewed his objection to the admission of this evidence at a bench conference in regards to the motion *in limine*. The trial judge overruled Defendant's objections and admitted both the evidence of prior convictions and pending battery charges, noting that Defendant's "intent is an issue in this case." (R. at 1137–38.)

Indiana Evidence Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, *intent*, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* (emphasis added).

When the State attempts to introduce evidence of a defendant's other crimes, wrongs, or acts, the trial court must perform a two-part inquiry: first, the court must determine whether the prior bad act evidence "is relevant to a matter at issue other than the defendant's propensity to commit the charged act." *Hicks v. State*, 690 N.E.2d 215, 221 (Ind.1997). If the evidence is offered only to produce the "forbidden inference," that is, that the defendant had engaged in other, uncharged misconduct and that the charged conduct was in conformity with the uncharged misconduct, then the evidence is inadmissible. *Id.* at 219; *see also Poindexter v. State*, 664 N.E.2d 398, 400 (Ind.Ct.App.1996).

The second part of the two-part inquiry involves the trial court "balanc[ing] the probative value of the evidence against its prejudicial effect pursuant to Rule 403." *Hicks*, 690 N.E.2d at 221 & n.10. The trial court has wide latitude, however, in weighing the probative value of the evidence against the possible prejudice of its admission, and its ruling will be reviewed only for an abuse of discretion. *Poindexter*, 664 N.E.2d at 400.

### B

In *Wickizer v. State*, 626 N.E.2d 795 (Ind.1993), this Court examined the "intent" exception to Evid.R. 404(b), finding it would

> be available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent. When a defendant alleges in trial a particular contrary intent, whether in opening statement, by cross-examination of the State's witnesses, or by presentation of his own case-in-chief, the State may respond by offering evidence of prior crimes, wrongs, or acts to the extent genuinely relevant to prove the defendant's intent at the time of the charged offense.

*Id.* at 799. We ultimately reversed the defendant's child molestation conviction, finding that his pre-trial assertion to police that he was not a "devious character" was insufficient to establish the requisite "claim of particularly contrary intent." *Id.* at 800.

In the present case, Defendant went beyond merely denying the charged culpability and affirmatively presented a claim of particular contrary intent—accidental killing. Here, the prior bad act evidence consisted of Defendant's 1988 and 1991 convictions for battery against his wife, in addition to evidence of four charges against Defendant for battering his wife that were pending at the time of her death, concerning incidents allegedly occurring on May 23, 1994, and July 9, 19, and 30, 1994.

In light of Defendant's claim of particular contrary intent that he accidentally killed his wife, we find these instances of prior bad act evidence were admissible under Rule 404(b) because each was "rele-

vant and probative in that it directly involved and shed light on Defendant's relationship with [the victim]." *Evans v. State*, 727 N.E.2d 1072, 1080 (Ind.2000) (citing *Ross v. State*, 676 N.E.2d 339, 346 (Ind.1996) ("[A] defendant's prior bad acts are ... usually admissible to show the relationship between the defendant and the victim.")). Furthermore, this Court has previously approved the admission of similar prior bad act evidence when a defendant claimed the victim's death was accidental. *See, e .g., McEwen v. State*, 695 N.E.2d 79, 87–88 (Ind.1998) (Evidence of the defendant's previous battery against the victim was admissible under Rule 404(b)) ("Although there was ample evidence of hostility already in the record, [the prior bad act evidence] was relevant to show a pattern of hostility dating back before the night of the killing. This illustrated the depth of possible motive and was also relevant to assessing [the defendant's] claim that [the victim] was stabbed accidentally.").

▮▮▮ Next, we assess whether any incident of prior bad act evidence should nonetheless have been excluded because its probative value was substantially outweighed by the danger of unfair prejudice. *See, e.g., Evans*, 727 N.E.2d at 1080 ("[The] evidence of [the d]efendant's prior misconduct was close enough in time (approximately 48 hours) to be genuinely relevant in showing Defendant's intent at the time of the murder.") (parenthetical in original); *Hicks*, 690 N.E.2d at 220 (A trial court's discretion in admitting evidence of the defendant's prior bad acts "includes determining the significance of the similarity or remoteness of evidence.") (citing *Fisher v. State*, 641 N.E.2d 105 (Ind.Ct. App.1994)). We review this balancing by

the trial court under an abuse of discretion standard. *See Mayberry v. State*, 670 N.E.2d 1262, 1268 (Ind.1996).

We find that the trial court did not abuse its discretion in admitting evidence of the four pending battery charges for conduct allegedly occurring in May and July of 1994. These prior incidents were close enough in time to maintain probative force in establishing a pattern of hostility leading up to the October 1994, killing. We also find that the trial court was within its discretion in concluding that the probative value of the 1988 and 1991 battery incidents—reduced to actual convictions—outweighed any resultant prejudice in this case given Defendant's specific claim of particular contrary intent.[9]

## VII

Defendant next contends that there is insufficient evidence to support his convictions for murder and aggravated battery.

### A

▮▮ To obtain a conviction for murder, the State must prove beyond a reasonable doubt that the defendant knowingly or intentionally killed the victim. Ind.Code § 35–42–1–1(1) (1993); *Powers v. State*, 696 N.E.2d 865, 869–70 (Ind.1998). Defendant was charged with knowingly killing his wife. Defendant claims that the evidence introduced by the State does not support this conclusion in that he "did not engage in conduct 'knowingly' [on] the night of October 14, 1994[,] due to his extreme intoxication and his past experiences involving physical contact with the victim." Appellant's Br. at 36.

---

9. We note that we find these convictions to be in the lower range of probative value given their remoteness in time and the fact that "the State had ample evidence of hostility, including the other [four] more recent incidents." *Hicks*, 690 N.E.2d at 222 (finding that the trial court erred in admitting prior bad act testimony about the defendant that was "graphic" *and* "prejudicial" in addition

to being remote in time and cumulative). And we make no statement concerning the admissibility of a defendant's previous convictions, which are remote in time, in the absence of a claim of particular contrary intent. *See id.* ("[A]t some point testimony about every incident of violence between the [defendant and the victim] becomes more prejudicial than probative.").

▮▮▮▮ When examining the sufficiency of evidence, we neither reweigh the evidence nor resolve questions of credibility. *Garland v. State*, 719 N.E.2d 1236, 1238 (Ind.1999), *reh'g denied*. Rather, we consider only the evidence most favorable to the judgment together with all reasonable inferences to be drawn from that evidence. *Brown v. State*, 720 N.E.2d 1157, 1158 (Ind.1999); *Sanders v. State*, 704 N.E.2d 119, 123 (Ind.1999). We affirm if, considering that evidence and those inferences, we find substantial evidence of probative value to support the judgment. *Minter v. State*, 653 N.E.2d 1382, 1383 (Ind.1995).

▮▮▮▮ Whether the defendant was so intoxicated that he could not form the mens rea required for the crime is a question for the trier of fact. *See Owens v. State*, 659 N.E.2d 466, 472 (Ind.1995). The conviction will be affirmed if there was substantial evidence of probative value that would have allowed the fact finder to conclude beyond a reasonable doubt that the defendant formed the required mental element. *See id.* Evidence of capacity to form criminal mens rea includes the ability to "devise a plan, operate equipment, instruct the behavior of others or carry out acts requiring physical skill." *Terry v. State*, 465 N.E.2d 1085, 1088 (Ind.1984). Moreover, if the defendant "was able to form the required mental element of the crime, the degree of intoxication is immaterial." *Barnes v. State*, 693 N.E.2d 520, 522 (Ind.1998).

▮▮▮ The State contends that sufficient evidence was presented to show that Defendant knowingly killed his wife. We agree. Although Defendant testified at trial that he was intoxicated at the time of the killing,[10] he also testified to performing acts that were rational and required physical skill such as checking his wife's breathing and straightening out her body to begin "doing CPR." And after her death,

instead of maintaining that he accidentally struck and killed his wife, Defendant told another motel resident that "he had killed his old lady and buried her and they would never find her ." (R. at 1501.)

Additionally, the forensic evidence introduced at trial was inconsistent with Defendant's claim that he instinctively struck his wife in the face with a "palm and fist" technique that he learned in the military in order to fend off her imminent attack of him with a lamp. To the contrary, the evidence indicated that Dot Crain died over a course of hours from a skull fracture, likely resulting from a blow to the top of the head, and also that she suffered three broken ribs. After considering all the evidence most favorable to the verdict as well as drawing all reasonable inferences therefrom, we find the jury could have reasonably concluded that Defendant knowingly killed his wife and did not just intend to batter her.

## B

Defendant also contends that the State failed in its burden of negating beyond a reasonable doubt his claim that he was acting under sudden heat when he killed his wife, thereby entitling him to a reversal of his murder conviction.

▮▮▮ Voluntary manslaughter is a lesser included offense of murder, distinguishable by the factor of a defendant having killed, while acting under sudden heat. Ind.Code § 35–42–1–3 (1993). To establish sudden heat, the defendant must show "sufficient provocation to engender ... passion." *Johnson v. State*, 518 N.E.2d 1073, 1077 (Ind.1988). Sufficient provocation is demonstrated by "such emotions as anger, rage, sudden resentment, or terror [that are] sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection." *Id.*

10. In response to defense counsel's question during trial as to how drunk he was when he struck his wife, Defendant responded, "I don't know. I was drunk, I guess." (R. at 1786.)

■ To obtain a conviction for murder, the State is not required to negate the presence of sudden heat because "[t]here is no implied element of the absence of sudden heat in the crime of murder." *Earl v. State,* 715 N.E.2d 1265, 1267 (Ind. 1999). However, once a defendant places sudden heat into issue, the State then bears the burden of negating the presence of sudden heat beyond a reasonable doubt. *See Evans,* 727 N.E.2d at 1077. It may meet this burden by rebutting the defendant's evidence or affirmatively showing in its case-in-chief that the defendant was not acting in sudden heat when the killing occurred. *See id.*

■ Defendant claims that his long-standing, confrontational relationship with his wife in combination with his alcoholism caused him to snap "for only a short moment" and suddenly strike her when she came at him with the lamp. Appellant's Br. at 42. Although we are inclined to agree that this evidence adequately introduced the element of sudden heat, we find that the totality of the evidence presented in this case is sufficient to support the jury's conclusion that Defendant did not act in sudden heat.[11]

To begin with, the jury may well have concluded that 5′4″ 130–pound Dot Crain, did not sufficiently provoke the 6′4″ 210–pound Defendant by just yelling and swinging a lamp at him.[12] After all, the possibility of physical confrontation during one of their arguments was nothing new for either Crain. Also, as set forth, *supra,* in Part VII–A, the forensic evidence tended to show that Dot Crain did not immediately die when struck by Defendant and Defendant acknowledged spending time drinking tequila and reflecting thereafter in the hotel room where she lay.

We find the evidence sufficient to conclude that the State negated Defendant's claim of "sudden heat" beyond a reasonable doubt. There is ample evidence to support the jury's verdict of murder, rather than voluntary manslaughter.

## VIII

Defendant also contends that he received ineffective assistance of counsel "due to several prejudicial errors committed by his trial counsel." Appellant's Br. at 42.

■ To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) defense counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that the result of the proceeding would have been different but for defense counsel's inadequate representation. *See Troutman v. State,* 730 N.E.2d 149, 154 (Ind.2000); *see also Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We presume that counsel's performance was adequate. *See Troutman,* 730 N.E.2d at 154; *Cook v. State,* 675 N.E.2d 687, 692 (Ind.1996).

Among the errors claimed by Defendant are that trial counsel failed to: (A) request a pretrial suppression hearing on his confession or call certain witnesses during it; (B) tender a jury instruction regarding the voluntariness of his confession; (C) com-

---

11. The jury rejected the trial court's instructions as to both sudden heat and involuntary manslaughter. (R. at 207–08.)

12. In Defendant's own words:
[Defense Counsel]
Q: Okay. You're out of the shower, pick it up from there.
[Defendant]
A: I get out of the shower and we made love. I don't know if I just fell asleep or passed out. And I just remember waking up and she was yelling. I don't know, I couldn't understand, I don't remember what she was saying. And that's when I got up out of bed and I was going to put my pants on. And I stepped, go to step around the bed and I looked up and she swung a lamp at me. And that's when I kind of ducked and I ducked down and when I came back up, I had hit her in the face with my hand. And she fell. And I looked at her and she didn't get up.
(R. at 1785–86.)

municate adequately with him and with his private investigator; (D) call and recall certain witnesses who he believes were romantically involved with the victim and could have been responsible for the damage to her skull; and (E) strike the entire jury panel that had access to the magazine article. We will review each claimed error in turn.

### A

Defendant's first ineffective assistance of counsel claim is that "trial counsel failed to ensure [that he] would receive a fair hearing to determine the voluntariness of his confessions and waiver of rights." Appellant's Br. at 43. Defendant specifically points out that trial counsel failed to file a pre-trial written motion to suppress his confessions and that neither he nor any other defense witness was called to testify during the suppression hearing, which was during the early stages of the trial.

█ A defense counsel's poor trial strategy or bad tactics do not necessarily amount to ineffective assistance of counsel. *See Whitener v. State,* 696 N.E.2d 40, 42 (Ind.1998) (citing *Davis v. State,* 675 N.E.2d 1097, 1100 (Ind.1996)). Moreover, "[a] decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess." *Brown v. State,* 691 N.E.2d 438, 447 (Ind. 1998).

█ Our review of the record establishes that trial counsel adequately represented Defendant during the suppression hearing, such that a tactical decision not to file a formal written motion to suppress did not rise to the level of ineffective assistance of counsel.[13] *See, e.g., Monegan v. State,* 721 N.E.2d 243, 251 (Ind.1999) ("In light of other steps taken in this ac-

tion, we cannot agree with Defendant's contention that defense counsel's strategic decision not to file a motion *in limine* rises to the level of ineffective assistance of counsel."); *Wickliffe v. State,* 523 N.E.2d 1385, 1387 (Ind.1988) (considering all other steps taken to effectively represent the defendant and finding defense counsel's tactical decision not to file motions *in limine* or motions to suppress did not constitute ineffective assistance of counsel).

█ As for the second half of Defendant's claim, we find that it was not unreasonable for trial counsel to not call witnesses,[14] including Defendant, to testify during the suppression hearing; the trial judge had sufficient information—including Defendant's Intoxilyzer test result of .12 BAC and the full text of his Kokomo statement—upon which to base his ruling. We find little merit in Defendant's claim that his after-the-fact assertions as to his intoxication level would have ultimately affected the trial court's ruling that his statements were voluntarily given. Defendant has not demonstrated that counsel's performance was unreasonable in this regard.

### B

Defendant next argues that he received ineffective assistance of counsel because "trial counsel failed to tender a jury instruction regarding the voluntariness of [his] confessions." Appellant's Br. at 44. We disagree.

As we explained in Part II, *supra,* it is the role of the trial court—not the jury—to determine whether a statement made by a defendant is voluntary and therefore admissible. *See id.; Coates v. State,* 534 N.E.2d 1087, 1093 (Ind.1989). Trial counsel was under no obligation to tender an

---

13. Moreover, oral motions *in limine* suffice for purposes of evidentiary rulings at both the trial and appellate level. *See Vehorn v. State,* 717 N.E.2d 869, 872 n.4 (Ind.1999) (citing *Davis v. State,* 598 N.E.2d 1041, 1047 (Ind. 1992), *cert. denied,* 510 U.S. 948, 114 S.Ct. 392, 126 L.Ed.2d 340 (1993)).

14. Besides himself, Defendant identifies no other witnesses whose testimony would have supported his argument to suppress his statements.

instruction regarding the voluntariness of Defendant's statements, and the trial court would not have been obligated to present such an instruction to the jury. *See Abbott v. State*, 535 N.E.2d 1169, 1173 (Ind.1989) (upholding the trial court's refusal to give an instruction on the voluntariness of a defendant's confession which specifically instructed the jury to consider the defendant's intoxication at the time an alleged admission was made); *Gibson v. State*, 694 N.E.2d 748, 756 (Ind.Ct.App.1998) (holding that the trial court did not err in refusing to give the defendant's tendered instruction regarding the voluntariness of his confession), *overruled on other grounds*, 702 N.E.2d 707 (Ind.1998).

## C

 Defendant also broadly contends that he received ineffective assistance of counsel because "trial counsel failed to communicate adequately with both [him] and [his] private investigator." Appellant's Br. at 45.

Defendant cites to no evidence in the record establishing trial counsel's failure to communicate with him nor does he show in any way how was prejudiced by a lack of communication. Defendant's unsupported general assertion in this regard is inadequate to establish ineffective assistance of counsel.

## D

Defendant contends that he received ineffective assistance of counsel because "tri-al counsel failed to call and recall certain witnesses." Appellant's Br. at 46.

 We give deference to strategy decisions by trial counsel. *Whitener v. State*, 696 N.E.2d 40, 42 (Ind.1998). We look to the totality of the circumstances when evaluating claims of ineffective assistance of trial counsel, and isolated strategy decisions do not necessarily amount to ineffectiveness. *Lawrence v. State*, 464 N.E.2d 1291, 1294–95 (Ind.1984).

 We cannot say that trial counsel was ineffective in not presenting the testimony of two male witnesses, "Mike W. and Rick F.," who Defendant now claims on appeal may have been "romantically involved with the victim" and may have "battered the victim during her lifetime ... caus[ing] damage to the victim's skull." Appellant's Br. at 46. There is simply no evidentiary basis to support this claim of ineffective assistance of counsel: nowhere in the record is there any indication that the victim was romantically involved with either of these men or that they may have battered the victim.[15]

 Likewise, Defendant's claim that he was prejudiced by counsel's failure "in not recalling the victim's sister, Bonnie Lee" must also fail. Lee testified that Defendant called her collect in late August or early September 1994 and threatened to kill Dot. Defendant now claims that recalling Lee to the witness stand would have revealed that Defendant was incarcerated during this time frame for violating a no contact order filed by the victim,

---

15. As sole support for his contention, Defendant cites to the testimony of Dot Crain's sister, Bonnie Lee, where she recalled Defendant mentioning the names of two men during a phone call with her:

[Deputy Prosecutor]
Q: [D]id you ever call the Defendant in an effort to locate Dot?
[Witness Lee]
A: Yes, I did.
* * *
Q: And what did you, what was the nature of the conversation between the two of you?

A: I asked him if he had heard from Dot. This was after she had been reported missing. And he said no. And I asked him if she [sic] knew where she was. And he said that she had left with Rick and Mike, which were friends. And I said you, he said it was like 4:30 in the morning when she had left. And I said, you saw her leave with them? "No, he said, I was asleep."

(R. at 1545–46.)

and as such, could not have made the collect call from jail. Appellant's Br. at 47.

Once again, there is simply no evidentiary basis to support Defendant's claim of ineffective assistance of counsel. Nowhere in the record is there any indication that Defendant was unable to place a collect call during this period of incarceration. Moreover, we frequently see cases where the record indicates that inmates are sometimes allowed to make collect phone calls while incarcerated. In fact, there was evidence presented at the suppression hearing that Defendant had amassed "astronomical" phone bills talking with a woman during his pre-trial incarceration for this matter. (R. at 2295; Defense Counsel: "[She] has been talking with [Defendant] on a regular basis when he was in the Hamilton County Jail early on and ... their phone bills were astronomical according to my client. . . .")

### E

Defendant's final ineffective assistance of counsel claim is that "trial counsel failed to move to strike the entire jury venire panel upon realization that such panel was tainted." Appellant's Br. at 47.

■■■ We are inclined to agree with Defendant that under prevailing professional norms most defense attorneys would have probably moved to strike the entire jury panel after learning that an incriminating article concerning their client's case had been found in the jury room. Nevertheless, to prevail on an ineffective assistance of counsel claim, Defendant must also demonstrate a reasonable probability that a motion to strike the entire venire would have succeeded. *See Troutman,* 730 N.E.2d at 153. And our review of the partial *voir dire* transcript satisfies us that

the trial judge would not have granted this motion given the potential juror's testimony that he did not think any other prospective juror saw the article and that in any event he could still judge the case impartially. *See supra* Parts III and IV. As such, Defendant's final ineffective assistance of counsel claim also fails.

### IX

Defendant's final claim is that his enhanced sentence of 60 years for murder, to be served consecutively with his 30–year habitual offender sentence, was "manifestly unreasonable in that the Trial Court failed to give appropriate mitigating value to both [his] surrender and subsequent confession as well as his disease of alcoholism." Appellant's Br. at 48.

### A

We first observe that the trial court made the following statement while sentencing Defendant:

> This Court would further note in regards to the charge of murder, the *presumptive sentence is a fifty year sentence.* To which the Court can add ten years or subtract ten years. . . . Certainly the aggravating circumstances do far outweigh any mitigating circumstances and this Court finds that this Court should impose *not only the fifty years but add to it the additional ten years* for aggravating circumstances and which this Court will then impose the full term of sixty years in regards to this murder charge.

(R. at 2303, 2305) (emphases added).[16]

■■■ This murder, however, was com-

---

16. Ultimately, the trial court listed no "significant" mitigating factors in its sentencing order; however, it did list the following significant aggravating factors: (1) Defendant has a lengthy criminal history; (2) any reduction in the sentence would depreciate the seriousness of the offense committed; (3) the offense occurred while the Defendant was out on bond;

(4) Defendant knew that the victim would be testifying against him at any retrial or hearing; (5) Defendant failed to alert authorities or get medical assistance for the victim; (6) and Defendant waited approximately two years before notifying the authorities of the victim's death.

mitted in October of 1994,[17] during which there were two versions of the sentencing statute for murder on the books. And in *Smith v. State*, 675 N.E.2d 693 (Ind.1996), we concluded that P.L. 158–1994, which provides a presumptive 40–year sentence for murder subject to a 20–year enhancement, rather than P.L. 164–1994, which provides a presumptive 50–year sentence for murder subject to a 10–year enhancement, governs murders committed between July 1, 1994 and May 5, 1995. *See Ellis v. State*, 707 N.E.2d 797, 805 (Ind. 1999) (observing same); *Jones v. State*, 675 N.E.2d 1084, 1086–87 (Ind.1996) (same).

Here, the record establishes that the trial court used P.L. 164–1994 when it sentenced Defendant to a presumptive 50–year sentence and thus was operating under a mistaken understanding of the applicable sentencing law. Because we "can only speculate as to what sentence the trial court would have imposed if it had been operating under a correct understanding of the presumptive sentence for murder," we remand this case for resentencing on the record. *Bufkin v. State*, 700 N.E.2d 1147, 1152 (Ind.1998) (remanding for resentencing when the trial court applied the incorrect murder sentencing statute) (citing *Alvarado v. State*, 686 N.E.2d 819, 824 (Ind.1997) (remanding for resentencing when it was not clear which sentencing statute the trial court applied)).

### B–1

We also briefly address Defendant's other contentions of sentencing error, because they may arise at resentencing.

▮ First, we consider Defendant's claim that the trial court "failed to give appropriate mitigating value to [his] voluntary surrender and subsequent confession to the crime." Appellant's Br. at 49. We begin by noting that Defendant did not "surrender" before confessing to killing his wife: he was already incarcerated at the Howard County Criminal Justice Center on unrelated felony charges that presumably—if resulting in convictions—would have led to a habitual offender adjudication.[18] Moreover, "[w]hat constitutes a 'significant' mitigating factor is generally within the discretion of the trial court," *Jones v. State*, 698 N.E.2d 289, 291 (Ind. 1998), and in certain situations, the "proper" weight to be given to a proffered mitigating factor may be to give it "no weight ... at all," *Ross v. State*, 676 N.E.2d 339, 347 (Ind.1996).

▮ Here, the trial court first considered Defendant's confession as a "mitigating factor," noting that "we would not be here if you had not come forward," (R. at 2298), but then it listed as one of several aggravating factors that "Defendant waited approximately two years before notifying the authorities of the victim's death," (R. at 434). While we acknowledge Defendant's contention that this is an arguably inconsistent analysis—needing clarification on resentencing—it does appear to us that the trial court considered the mitigating effect of Defendant's confession in its sentencing decision.[19] *See, e.g., Widener v. State*, 659 N.E.2d 529, 534 (Ind.1995) (not-

---

**17.** Although it is impossible to know the exact date of Dot Crain's death, all parties to this appeal are in agreement that the murder took place in October of 1994. Appellant's Br. at 11; Appellee's Br. at 2. The information charging Defendant with this murder identified a time frame of "on or between the 14th day of October, 1994 and the 2nd day of November, 1994." (R. at 30.) For purposes of this discussion, it matters not whether the murder took place in October or November of 1994.

**18.** Defendant had been arrested and incarcerated in Kokomo for Battery on a Police Officer, a class D felony, and Intimidation, a class D felony, in addition to Domestic Battery, a class A misdemeanor. No charges were filed due to charges being filed in this case.

Defendant's two prior unrelated felony charges—used in the habitual offender phase during this trial—were the 1988 conviction for battering his wife and a 1990 felony drunk driving conviction.

**19.** In this regard, we note that the trial judge did hear Defendant acknowledge under cross-

ing that a "sentencing judge may not ignore facts in the record that would mitigate an offense"). Therefore, we decline to find that the trial court failed to give appropriate mitigating value to Defendant's confession.

### B–2

Finally, we consider Defendant's claim that the trial court "failed to give appropriate mitigating value to [his] mental and physical disease of alcoholism." Appellant's Br. at 52.

█ Again, it is within the sound discretion of the trial court to determine what constitutes a significant mitigating factor worthy of decreasing a presumptive sentence. *See Jones*, 698 N.E.2d at 291; *Sims v. State*, 585 N.E.2d 271, 272 (Ind. 1992). During the sentencing hearing, the trial court did in fact consider Defendant's underlying defense theory that his "capacity to appreciate the criminality of [his] conduct or conform that conduct to requirements of law was substantially impaired as a result of mental disease or defect or of intoxication." (R. at 2297–98.) Ultimately, the trial court decided not to list this as a significant mitigator in its sentencing order.

█ Here, the record does not support Defendant's claim that mental defect or alcoholism caused his actions. To the contrary, there was sufficient evidence to support the jury's verdict that Defendant knowingly and intentionally killed his wife. *See supra* Part VII. Furthermore, we

have recently observed that " '[f]inding [intoxication] to be mitigating may involve the consideration and evaluation of various factors, among them the degree of intoxication and the defendant's culpability in the knowing and voluntary consumption of alcohol,' " *Huffman v. State*, 717 N.E.2d 571, 574–75 (Ind.1999) (quoting *Legue v. State*, 688 N.E.2d 408, 411 (Ind.1997)), such that " '[t]hese matters are best left to the sound discretion of the trial court,' " *id.* The trial court in this case did not fail in assigning an appropriate mitigating value to Defendant's claim of alcoholism.

### Conclusion

We affirm the trial court in all respects but remand for resentencing consistent with this opinion.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.

---

examination that he told other inmates that the only reason he confessed was because the Carmel Motel had changed ownership and he feared that his wife's body would be found because excavation would soon begin. Furthermore, we view this case—where the defendant (1) was a primary suspect in the victim's death; (2) had four charges for battering the victim pending against him when she disappeared; and (3) was already incarcerated on unrelated felony charges and facing a possible habitual offender adjudication—to be more in line with those facts in *Battles v. State*, 688 N.E.2d 1230, 1237 (Ind. 1997) ("[D]efendant's eventual capture and

arrest were nigh unavoidable, and we cannot say that the trial court abused its discretion in failing to find that his voluntary statement to police was a mitigating factor entitled to any *significant* weight.") (emphasis added), than with those facts underlying our decision in *Brewer v. State*, 646 N.E.2d 1382 (Ind.1995) (remanding for a lesser sentence in light of defendant's confession), where the defendant literally walked in off the street as a suspicionless free man (he had never been suspected in the murder) to both surrender and confess to a murder "that he had committed nearly fifteen years before," *id.* at 1386.