**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 01 2013, 8:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STEVEN R. KNECHT**
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RICKIE B. GILLIAM, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1206-CR-482 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Thomas H. Busch, Judge
Cause No. 79D02-1201-FA-1

**April 1, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, the appellant-defendant, Rickie B. Gilliam, is appealing his convictions for two counts of Attempted Murder,[1] a class A felony, and Unlawful Possession of a Firearm by a Serious Violent Felon,[2] a class B felony. Gilliam argues that the trial court erred in admitting evidence of a prior act of violence against one of the victims in violation of Indiana Evidence Rule 404(b), that the evidence was insufficient to support the convictions because the victims did not unequivocally identify him as the shooter, and that the aggregate sixty-three-year sentence that was imposed on these offenses and others was inappropriate when considering the nature of the offenses and his character.

We conclude that the trial court properly admitted evidence of Gilliam's previous threat to kill one of the victims to show motive and the nature of the relationship between him and the victim, that he was properly identified as the perpetrator, and that Gilliam has failed to show that his sentence was inappropriate. Thus, we affirm the judgment of the trial court.

### FACTS

Heather Short and Gilliam were involved in a romantic relationship for approximately three years and lived together in Lafayette with their three-year-old son. In December 2010, the couple argued and Gilliam pulled out a gun. Gilliam stated that he would "kill [Heather] with the gun if [she] didn't knock [her] sh*t off." Tr. p. 147.

---

[1] Ind. Code § 35-41-5-1; Ind. Code § 35-42-2-1.5.

[2] Ind. Code § 35-47-4-5(c).

2

Heather was scared and would not leave the couple's bedroom. At some point, Heather sent a text message to her brother, Jeremiah Short, who came to the house and went to Heather's bedroom window. Jeremiah talked to Heather and wanted her to leave with him; however, Heather declined.

On January 8, 2011, Heather and Gilliam ended their relationship. Heather went to Jeremiah's to stay, and at some point, Heather and Jonathan Beard, Jeremiah's roommate, began a sexual relationship. On January 14, 2011, Heather drove Beard to his job at Penguin Liquors. Heather asked Beard if he knew of any place where she could stay that night because she "was trying to avoid her son's father." Tr. p. 254. Beard offered to rent her a motel room for the weekend. After Beard's shift ended at 2:00 a.m., Heather picked him up and drove to an Economy Inn, where Beard paid for a room.

After pulling up to one of the rooms, Heather and Beard noticed that the number on the door was not the same room that he had rented. Heather put the car in reverse, but at that moment, Gilliam drove up in a red vehicle. Gilliam exited his car and started shooting at Heather and Beard with a handgun. Numerous rounds hit the body of the vehicle and the windows. Beard hunched down to avoid being shot and Heather accelerated. Gilliam fired another shot that struck Heather's windshield.

After Heather drove away, she contacted 911 and reported that Gilliam had tried to kill her and Beard. Shortly after the call, several police officers went to Gilliam's residence and noticed a red Chevy Impala parked in the driveway, but the license plate on

3

the vehicle was registered to Gilliam's red Pontiac Grand Prix. The Impala was slightly covered in snow, and the engine was cold.

The officers set up a perimeter around the house and although a television was on, no one was observed entering or exiting the house. Later that morning, a SWAT team searched the house and confirmed that no one was inside. The officers discovered twelve rounds of .9mm Ruger ammunition, as well as several bags of marijuana, marijuana cigarettes, rolling papers, and digital scales. Several .25 caliber shell casings were found in the motel parking lot where the shooting occurred.

On the day of the shooting, Heather and Beard positively identified Gilliam from a photo array. Later that week, Jeremiah, who was Gilliam's friend, observed Gilliam driving a red Pontiac Grand Prix. On February 14, 2011, the State charged Gilliam with the following offenses:

> Count I—Attempted Murder, a class A felony
> Count II—Attempted Murder, a class A felony
> Count III—Attempted Aggravated Battery, a class B felony
> Count IV—Attempted Aggravated Battery, a class B felony
> Count V—Attempted Battery, a class C felony
> Count VI—Attempted Battery, a class C felony
> Count VII—Criminal Recklessness, a class C felony
> Count VIII—Carrying a Handgun Without a License, a class A misdemeanor
> Count IX—Pointing a Firearm, a class D felony
> Count X—Pointing a Firearm, a class D felony
> Count XI—Dealing in Marijuana, a class D felony
> Count XII—Possession of Marijuana, a class D felony,
> Count XIII—Maintaining a Common Nuisance, a class D felony
> Count XIV—Serious Violent Felon in Possession of a Firearm, a class B felony

4

On December 29, 2011, the State filed a notice under Indiana Evidence Rule 404(b), indicating that the State intended to offer evidence of the previous incident in December 2010 involving Gilliam's threat to kill Heather with a handgun.

Following a hearing on December 30, 2011, the trial court ruled that evidence of the earlier incident would be admissible because it was relevant to show motive, intent, identity, and absence of mistake and accident. The trial court also noted that it would give a limiting instruction to the jury.

On April 9, 2012, Beard spoke with Officer Michael Barthelemy and again identified Gilliam as the shooter. Beard told Officer Barthelemy that Gilliam was approximately five feet away when the shooting occurred.

Gilliam's jury trial commenced on April 16, 2012. At trial, Heather's account of the events changed in several respects. For instance, Heather had previously told police that Gilliam had been dealing in marijuana. However, at trial, she claimed that she did not remember making that statement. When asked about the fact that Gilliam had threatened to kill her, Heather claimed that she "guessed" that was accurate. Tr. p. 147. Similarly, although Heather had previously stated that she was afraid of Gilliam when he threatened to kill her, she claimed at trial that she was not really scared. Finally, although Heather had previously reported to the police that she had seen Gilliam after the first gunshot, she claimed at trial that she assumed it was him because she had seen the red car.

5

Laura Berry-Bermann, the Executive Director for the Indiana Coalition Against Domestic Violence, also testified at trial. Berry-Bermann testified that it is not unusual for a woman in circumstances similar to those experienced by Heather to subsequently recant or modify a prior identification of the person who committed the charged offense. Berry-Bermann stated that there are many possible explanations for this phenomenon, including a fear of retaliation and future violence, fear of the loss of income and support for a child that they may share in common, and loyalty to the father of their child.

Following the presentation of evidence, Gilliam was found guilty as charged on all counts. The trial court conducted a bench trial on the serious violent felon charge, and Gilliam was also found guilty on that count.

At the sentencing hearing, the trial court entered judgments of conviction on Counts I, II, XI, XIII and XIV. Gilliam was sentenced to an aggregate term of sixty-three years of incarceration, and he now appeals.

## DISCUSSION AND DECISION

### I. Admissibility of Evidence Involving Prior Incident

Gilliam argues that the trial court erred in admitting evidence of his alleged previous threat to kill Heather. Gilliam argues that the admission of such evidence was erroneous because it did not demonstrate motive and intent to commit murder or shed any light on the relationship that he had with Heather.

We review a trial court's decision to admit or exclude evidence only for an abuse of discretion. Noojin v. State, 730 N.E.2d 672, 676 (Ind. 2000). Reversal is appropriate

6

only when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997). We will affirm the trial court's decision to admit evidence if it is sustainable on any basis in the record. Barker v. State, 695 N.E.2d 925, 930 (Ind. 1998).

Indiana Evidence Rule 404(b) provides in part that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, [or] identity. . . ." When assessing the admissibility of evidence under Evidence Rule 404(b), a trial court must: 1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and 2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. Boone v. State, 728 N.E.2d 135, 137-38 (Ind. 2000). The evidence is inadmissible when the State offers it only to produce the "forbidden inference" that the defendant has engaged in other, uncharged misconduct and the charged conduct was in conformity with the uncharged misconduct. Crain v. State, 736 N.E.2d 1223, 1235 (Ind. 2000).

However, we also note that the trial court has wide latitude in weighing the probative value of the evidence against the possible prejudice of its admission. Id. If evidence has some purpose besides behavior in conformity with a character trait and the balancing test is favorable, the trial court can elect to admit the evidence. Boone, 728

N.E.2d at 138. More specifically, evidence that is necessary for the jury to understand the relationships between the victim, various witnesses, and the defendant may be admissible. See Ross v. State, 676 N.E.2d 339, 346 (Ind. 1996) (holding that the defendant's statements that the victim "would pay," and threats to kill the victim made two months before the murder, were admissible under Indiana Evidence Rule 404(b) because the evidence demonstrated the defendant's motive and intent to commit the murder and shed light on the relationship between the victim and the defendant).

Like the circumstances in Ross, we believe that Gilliam's statement that he would "kill [Heather] with the gun if [she] didn't knock [her] sh*t off," tr. p. 147, was admissible to show both motive and the nature of the relationship between Gilliam and Heather around the time of the shooting.

We also cannot say that the probative value of the evidence was outweighed by the danger of unfair prejudice. For instance, in Berry v. State, 704 N.E.2d 462, 464 (Ind. 1998), it was held that the defendant's threat, "I will kill you all and then leave," made to the eventual victims six months before their murders, was properly admitted into evidence at trial and that the danger of unfair prejudice did not outweigh the probative value of the statements. In other words, this evidence was illustrative of the relationship between the defendant and the rest of his family. The same is true here. Therefore, we conclude that the trial court did not abuse its discretion in admitting evidence regarding the prior threat that Gilliam made against Heather.

## II. Sufficiency of the Evidence

Gilliam next claims that the evidence was insufficient to support his convictions for attempted murder and possession of a firearm by a serious violent felon. Specifically, Gilliam contends that his convictions must be set aside because Heather and Beard's identification of him at trial as the shooter were equivocal and unreliable.

In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of the witnesses. Vitek v. State, 750 N.E.2d 346, 352 (Ind. 2001). We look to the evidence most favorable to the judgment and the reasonable inferences drawn therefrom. Id. We will affirm the conviction if there is probative evidence from which a reasonable finder of fact could have found the defendant guilty beyond a reasonable doubt. Id. The testimony of a single eyewitness is sufficient to sustain a conviction. Badelle v. State, 754 N.E.2d 510, 543 (Ind. Ct. App. 2001). Identification evidence need not be wholly unequivocal to be sufficient to support a conviction. Griffin v. State, 501 N.E.2d 1077, 1078 (Ind. 1986).

In this case, even assuming for the sake of argument that Heather's and Beard's identifications of Gilliam during their testimony at trial was equivocal, Gilliam's claim would fail. More specifically, there was other evidence besides the trial testimony establishing that Gilliam was the shooter. Such evidence included the 911 call that Heather made minutes after the shooting where she positively identified Gilliam as the shooter. State's Ex. 8. Heather also identified Gilliam from a photo array.

9

Beard also testified that Gilliam was the shooter. Tr. p. 271, 273, 296, 402. Gilliam was afforded the opportunity to cross-examine Beard and could argue the reliability of his testimony to the jury.

In sum, any potential errors in eyewitness identification are to be resolved during trial and not on appeal. Gorman v. State, 968 N.E.2d 845, 850 (Ind. Ct. App. 2012), trans. denied. Gilliam's challenge is merely requesting that we reweigh the evidence and determine witness credibility, which we will not do. We conclude that the evidence was sufficient to support Gilliam's convictions beyond a reasonable doubt.

### III. Sentencing

Finally, Gilliam argues that the aggregate sixty-three-year sentence that was imposed was inappropriate considering the nature of the offenses and his character. Specifically, Gilliam maintains that the sentence was inappropriate because neither victim was injured, and his criminal history is not significant. Thus, Gilliam requests that we revise his sentence to an aggregate term of thirty years.

Under Appellate Rule 7(B), we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. "[W]hether we regard a sentence as appropriate . . . turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind. 2008). Under appropriateness review, the question is not whether another sentence

would be more appropriate; rather, the question is whether the sentence imposed was inappropriate. Steinberg v. State, 941 N.E.2d 515, 535 (Ind. Ct. App. 2011), trans. denied. The burden is on the defendant to persuade us that his sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

As for the nature of the offense, the record shows that Gilliam committed several offenses, including an attempt to kill both Heather and Beard. Gilliam fired several shots at the victims and several bullets struck Heather's vehicle, even shooting out the vehicle's windows. Tr. p. 120-24, 243-44, 346-47, 364, 367. When considering the nature of the offense, the fact that there were multiple victims generally supports the imposition of enhanced and consecutive sentences. Sanchez v. State, 938 N.E.2d 720, 723 (Ind. 2010). Here, Gilliam's aggregate sentence of sixty-three years is well below the maximum sentence of more than 120 years that could have been imposed for two class A felonies, a class B felony, and two class D felonies.[3] Thus, Gilliam's nature of the offense argument avails him of nothing.

With regard to Gilliam's character, the record demonstrates that he has frequently engaged in prior criminal behavior. More particularly, Gilliam admitted to using numerous drugs, including cocaine and marijuana, on a regular basis. He also has a record of juvenile adjudications and criminal convictions, which include a juvenile adjudication for theft in 1981, a conviction for burglary, a class B felony in 1985, and a

---

[3] Pursuant to Indiana Code section 35-50-2-4, the maximum sentence for a class A felony is fifty years. The maximum sentence for a class B felony is twenty years in accordance with Indiana Code section 35-50-2-5, and the maximum sentence for a class D felony under Indiana Code section 35-50-2-7 is three years.

conviction for dealing in cocaine, a class A felony, in 1990. Appellant's App. p. 164-66. Gilliam also obtained a withheld judgment for a battery charge in 1990, and he was arrested for invasion of privacy and operating a vehicle while intoxicated while the current charges were pending.

In sum, the juvenile adjudications, criminal convictions, and record of arrests, demonstrate Gilliam's disdain and disrespect for the law. Gilliam has not benefited even when our judicial system has shown him leniency. Rather, he has continued to commit crimes. Also, Gilliam's failure to take proactive measures to address his drug abuse reflects poorly on his character. In light of these circumstances, Gilliam has failed to show that his sentence was inappropriate.

The judgment of the trial court is affirmed.

RILEY, J., and BARNES, J., concur.