

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dominique Brianna Bowman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 29, 2017

Court of Appeals Case No.
45A04-1609-CR-2056

Appeal from the Lake Superior
Court

The Honorable Samuel L. Cappas,
Judge

Trial Court Cause No.
45G04-1508-F3-39

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Dominique Brianna Bowman (Bowman), appeals her conviction for Count I, aggravated battery, a Level 3 felony, Ind. Code § 35-42-2-1.5(2); and Count II, battery resulting in serious bodily harm, a Level 5 felony, I.C. § 35-42-2-1(b)(1);-(f)(1).

We affirm.

# ISSUE

Bowman raises one issue on appeal, which we restate as follows: Whether the trial court properly permitted the victim to remove her prosthetic in the presence of the jury.

# FACTS AND PROCEDURAL HISTORY

During the early evening of July 23, 2015, Crystal Washington (Washington), together with her sister, Angela Washington (Angela), and their friends, Melvin Quinn (Quinn) and Janice Allen (Allen), were relaxing in the shade of a tree at Allen's house in Gary, Indiana. In the course of the evening, Angela's son and daughter, Bowman, stopped by. After Bowman exited the vehicle, Angela asked Bowman why she had been smoking marijuana in Angela's house. Bowman replied, "I don't give a fuck. Auntie Crystal acts like this is her house anyway." (Transcript pp. 92, 31-32). Washington "got out of the chair, [and] walked around to the car because [Bowman] was being disrespectful to [her] and [her] sister." (Tr. p. 58). Washington and Bowman began "tussling and wrestling." (Tr. p. 32). Angela, Allen, and Quinn broke up the fight.

[5] After the altercation was broken up, Washington walked back toward Allen's residence while Bowman went to the car and grabbed "some kind of object," that appeared to have been made of iron. (Tr. p. 34). Bowman struck Washington in the eye with the item. Washington started bleeding profusely and fell to the ground. Quinn took off his shirt and used it in an attempt to stop the bleeding. When Washington reached the hospital, the doctors determined that her left eye had ruptured and needed to be removed.

[6] On August 25, 2015, the State filed an Information, charging Bowman with Count I, aggravated battery, a Level 3 felony, and Count II, battery resulting in serious bodily injury, a Level 5 felony. On April 4 and 5, 2016, the trial court conducted a jury trial. During the proceedings, the trial court admitted, without objection, a photograph of Washington's injury upon her initial hospitalization. The State subsequently requested permission for Washington to remove her prosthetic eye in the presence of the jury to demonstrate "the injury that was suffered[.]" (Tr. p. 38). Bowman objected and the trial court conducted a bench conference, during which the following colloquy occurred:

> [TRIAL COURT]: You know what I think I should do, after thinking about this and listening to this, excuse the jury and look and see how it appears to me before I allow her to do that in front of them.

> [STATE]: I personally think – I mean, it's a charge of aggravated battery. And I think that the mere fact of removing [an] eye has value, not value to be prejudicial, but value to show how serious this injury is. It's just not a punch in the eye. And the jury

deserved to see what happened, what actually happened to her as the victim. I think it's important.

[BOWMAN]: It's prejudicial to show that. And the State has – pulling the emotional strings of the jury. And they have photographs to show that. To show the actual impact with the eye being out of the head. So they are basically doing that.

[STATE]: That means you can never demonstrate an injury?

[TRIAL COURT]: No, it doesn't mean that. The scars are not as likely to inflame a jury as to remove an eye. It is something that's unusual and has the possibility of – I mean, the more I think about it, of if it's – it could be gut wrenching reaction. So what I think I am going to do is dismiss for five or ten minutes. I am going to have her do it in here to see if it's – the effect it has on me. And then I will consider letting them see it. But I think your arguments [State] make sense to me. But it is an unusual circumstance the more I think about it. So I am going to have them go into the jury room for just five minutes. We will have her do the demonstration and we will bring them back out.

(Tr. pp. 38-40). Accordingly, the jury was excused and the trial court proceeded with the demonstration outside the presence of the jury. After Washington removed the prosthetic, the following exchange took place:

[TRIAL COURT]: Okay. It appears to me the procedure is – I don't know how to say this in the correct way. But it's not, and again my apologies. The way she removed her eye was almost like – I feel bad saying this, but it's kind of like she removed a contact, just for purposes of the record, although a little bit more effort. And obviously it's more severe. And I don't mean to minimize the injury. But the way she did it, to me does not look like it would inflame the jury. In other words, if she took a

protracted amount of time removing it, if there were, you know, screaming and yelling associated with it, whatever, then I could see that being a problem. But clearly it has an emotional impact on her. But I think she handled it in a proper way. And I am going to allow the jury to see the demonstration.

[BOWMAN]: I will continue my objection.

[TRIAL COURT]: It's noted.

[BOWMAN]: After seeing the removal of the eye, which I think was bad enough, combined that with her reaction, which is normal, I think that her emotional state is normal. However, I think the combination of that, the jurors seeing that, it only has one impact, only has one result. And that is impact of inflaming their emotions regarding the injury.

[TRIAL COURT]: Well, you know, any other victim of a crime, someone paralyzed from a gunshot or having lost a limb has some – the same – I don't want to say the same. But has attendant, you know, emotions connected with describing their injuries. And this woman's wasn't any different. She should be allowed to testify to it. So I note your objection. I am going to overrule it. In other words, many people come through the courtroom with a variety of severe injuries to varying degrees. And this is substantial, but – you understand what I am saying? I mean, there are – not minimizing her injury, but there are people from their own perspective who could say they have lost a leg, lost an arm. They are quadriplegics. And again the photos of that I don't think are necessarily any less inflammatory than what we have witnessed today. I will allow it.

(Tr. pp. 41-43). At the close of the evidence, the jury found Bowman guilty as charged.

On August 4, 2016, the trial court conducted a sentencing hearing. After hearing arguments, the trial court merged Count II into Count I and sentenced Bowman to nine years of imprisonment with five years executed and four years to be served in community corrections.

Bowman now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Bowman contends that she was unduly prejudiced when the trial court permitted Washington to remove her prosthetic eye in the presence of the jury to demonstrate the severity of her injury. Noting that the State had already admitted photographs showing Washington's eye injury, Bowman maintains that the relevancy of a live demonstration was substantially outweighed by the prejudicial effect of the "gruesome" injury and inflamed "the passions of the jury" in violation of Indiana Evidence Rule 403. (Appellant's Br. p. 7).

The trial court has inherent discretionary power over the admission of evidence, and its decisions are reviewed only for an abuse of that discretion. *Myers v. State*, 887 N.E.2d 170, 185 (Ind. Ct. App. 2008), *reh'g denied, trans. denied*. Accordingly, we will reverse the trial court's decision only when it is clearly against the facts and circumstances before the court. *Duvall v. State*, 978 N.E.2d 417, 422 (Ind. Ct. App. 2012), *trans. denied*. Even if the trial court abused its discretion in admitting evidence, the judgment will be undisturbed if the decision to admit evidence is harmless error. *Id*. "Harmless error occurs 'when the conviction is supported by such substantial independent evidence of guilt as

to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction.'" *Id*. (quoting *Lafayette v. State*, 917 N.E. 2d 660, 666 (Ind. 2009)).

[11] By applying Indiana Evidence Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" Ind. Evid. R. 403. "'Unfair prejudice' addresses the way in which the jury is expected to respond to the evidence; it looks to the capacity of the evidence to persuade by illegitimate means, or the tendency of the evidence 'to suggest decision on an improper basis. . .'" *Ingram v. State*, 715 N.E.2d 405, 407 (Ind. 1999) (quoting 12 ROBERT LOWELL MILLER, INDIANA PRACTICE § 403.102 AT 284 (1995)). However, we recognize all relevant evidence is necessarily prejudicial in a criminal prosecution. *Wages v. State*, 863 N.E.2d 408, 412 (Ind. Ct. App. 2007), *reh'g denied, trans. denied*. Therefore, the danger of unfair prejudicial impact arises from the potential for a jury to substantially overestimate the value of the evidence, or its potential to arouse or inflame the passions or sympathies of the jury. *Id*.

[12] To convict Bowman of a Level 3 felony aggravated battery, the State was required to prove that Bowman had inflicted an injury on Washington "that caused protracted loss or impairment of the function of a bodily member or organ." I.C. § 35-42-2-1.5(2). To support its argument that the best evidence of the protracted loss was established through the live removal of the prosthetic, the State focuses our attention on *Crain v. State*, 736 N.E.2d 1223 (Ind. 2000).

[13]     In *Crain*, the trial court permitted the State to introduce the deceased victim's skull into evidence as a visual aid to supplement its expert witness testimony. *Crain*, 736 N.E.2d at 1233. During the State's case-in-chief, the jury members were given the opportunity to come forward and examine the skull, which was presented in three pieces on a table in front of the jury box. *Id*. On appeal, the defendant argued that any relevance from this evidence was substantially outweighed by its prejudicial value. *Id*. at 1234. "At first blush," our supreme court found "it a bit unsettling that the trial court would allow the prosecution to use the actual skull of the victim to supplement its expert testimony. In our view, other conventional alternatives—such as high resolution photographs, video, and charts—could no doubt have been used to assist the State's expert witnesses in 'demonstrat[ing] various healing stages of the injuries, colorations of the bone, and staining in the skull.'" *Id*. Nevertheless, observing that the trial court had carefully balanced the probative value against the skull's prejudicial effect, the supreme court found that "the skull was neither particularly gruesome nor ominous as it lay in three separate pieces, appearing as if it was found on an archeological dig." *Id*. Reiterating its concern that "the State could have just as easily supplemented its witness testimony with other conventional exhibits," the court nonetheless affirmed the trial court's evidentiary decision. *Id*.

[14]     Although the removal of a prosthetic eye in the presence of the jury is an issue of first impression for Indiana, other jurisdictions have addressed this situation under the particular circumstances of personal injury cases. In *Burnett v. Caho*,

285 N.E.2d 619, 622 (Ill. Ct. App. 1972), *reh'g denied*, a farm employee instituted an action to recover damages for his injury which resulted when, while cutting a roll of steel-woven wire, the son of the farm's manager failed to hold the wire in position, causing it to snap up and destroy the employee's right eye. While photographs of the scene of the injury were being identified, the trial court allowed the plaintiff to remove his artificial eye in the presence of the jury. *Id*. at 623-24. On appeal, the court affirmed the admission of evidence, noting "[i]t is common practice to display personal injuries to the jury even though there is no controversy as to the existence, nature and extent thereof." *Id*. at 624. Likewise, in *Shell Petroleum Corp. v. Perrin*, 64 P.2d 309, 314 (Okla. 1936), *reh'g denied*, the supreme court allowed the removal of a prosthetic eye in the presence of the jury by the four-year-old victim of a car accident. Analogizing the situation to "instances where dead members, such as amputated legs, were exhibited to the jury," the supreme court found that "this was a form of wound, and wounds are ordinarily permitted to be shown the jury." *Id*. *See also Bowerman v. Columbia Gorge Motor Coach System, Inc.*, 284 P. 579 (Or. 1930) ("[W]ith due regard of decency," it was permitted for the plaintiff to remove her glass eye in the presence of the jury.); *Davis v. Christmas*, 248 S.W. 126 (Tex. Ct. App. 1923) (Because the victim could have removed his artificial eye prior to taking the witness stand, it was permissible for him to do so while on the stand.), *reh'g denied*.

[15]  In this case, the prosthetic eye was relevant and probative given the State's burden to prove a protracted injury. While the State had already introduced

into evidence, without objection by Bowman, a photograph taken on the date of the incident which clearly showed Washington's eye injury and Bowman did not dispute that Washington had lost an eye due to the fight, the State was required to establish a "*protracted* loss or impairment of the function of a bodily member or organ., not merely an injury on the day of the incident. *See* I.C. § 35-42-2-1.5(2) (emphasis added). Even though, a "conventional alternative" was already in front of the jury, the State still needed the live demonstration to carry its burden of proof. *See Crain*, 736 N.E.2d at 1234. As in *Crain*, the trial court carefully balanced the probative value against the prosthetic's prejudicial effect by requesting an initial demonstration outside the presence of the jury prior to admitting and publishing this evidence. *See id.* Accordingly, we conclude that the trial properly admitted the relevant and probative evidence of Washington's actual physical injury and no unfair prejudice occurred.

[16] Assuming *arguendo*, the trial had abused its discretion in admitting the live demonstration, which it did not, this would still have amounted to harmless error. In an attempt to allege that there is a substantial likelihood that the questioned evidence contributed to the conviction, Bowman contends that "it likely affected the jury's impression of" Bowman's self-defense claim. (Appellant's Br. p. 9). Pointing to Washington's admission that she was the initial aggressor, Bowman claims that she was merely defending herself from Washington's attack. We disagree. While a person is justified in using reasonable force for protection, "a person is not justified in using force if the person has entered into combat with another person or is the initial aggressor

unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action." I.C. § 35-41-3-2(g)(3). Evidence presented at trial reveals that the State rebutted Bowman's self-defense claim. After the initial altercation between Bowman and Washington was broken up by the bystanders, Washington took "two to three steps" towards Allen's residence. (Tr. p. 47). Despite the fight being over and Washington retreating, Bowman reached into the car, grabbed "some kind of object," and hit Washington in the eye. (Tr. p. 34). Therefore, Bowman did not have a valid self-defense claim and she failed to establish that the removal of the prosthetic contributed to the guilty verdict.

# CONCLUSION

[17] Based on the foregoing, we conclude that the trial court properly admitted and allowed publication of the actual physical injury.

[18] Affirmed.

[19] Crone, J. and Altice, J. concur