## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 29 2018, 9:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Vincent M. Campiti
Nemeth Feeney Masters & Campiti, P.C.
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Young,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 29, 2018

Court of Appeals Case No.
71A04-1708-CR-1867

Appeal from the St. Joseph Superior Court

The Honorable Elizabeth C. Hurley, Judge

Trial Court Cause No.
71D08-1606-MR-5

**Barnes, Judge.**

## Case Summary

Michael Young appeals his conviction for murder. We affirm.

## Issues

The issues before us are:

I. whether the trial court properly admitted evidence that the victim had Bibles in his possession and citations to Bible verses on his shoes when he was killed; and

II. whether the prosecutor committed misconduct during opening and closing argument.

## Facts

On May 31, 2016, Young and Karla Beachy-Wedge were together at a bar in South Bend. At one point, Beachy-Wedge went outside alone to smoke a cigarette in her car. As she was getting ready to exit her car, a black man wearing a red shirt or sweater forced her door open and demanded money. Although Beachy-Wedge initially told the man she had no money, there was a $50 bill in her car that he saw and that she gave to him. The man then walked away, and Beachy-Wedge stayed in her car and smoked another cigarette to calm down.

After the incident, Beachy-Wedge exchanged texts with Young, who then came out to her car. Beachy-Wedge told Young what had happened, and Young became upset. Beachy-Wedge told Young that they should call the police, but Young instead elected to look for the robber himself. Beachy-Wedge described

the robber as a black man wearing a red shirt of some kind and with a backpack, but she did not get a good look at his face. Although Young, who is white, already had a firearm on him, he went to his vehicle to retrieve a 9mm Glock that he was more comfortable with and then went looking for the robber.

After walking down several streets and alleys and not seeing anyone matching Beachy-Wedge's description of the robber, Young saw a black man in a red t-shirt with a backpack walking towards him. This man was Markest Flowers. Young confronted Flowers and asked him if he was involved in a robbery that just happened. According to Young, Flowers did not say yes or no to Young's question but instead threatened to "f*** me up." Tr. Vol. III p. 109. Flowers attempted to walk away from Young, but Young followed him and kept questioning him; Flowers kept refusing to respond and instead threatened to hurt Young if Young did not leave him alone.

Several witnesses saw Young following Flowers while crossing a street, and it appeared to them that Young was talking and Flowers was silent. Beachy-Wedge also briefly saw Flowers appearing to jog backwards away from Young and making hand gestures. Upon reaching the curb, witnesses saw Young appear to grab Flowers's backpack, causing Flowers to turn around, at which point Young shot Flowers in the face. One witness overheard Young say, "you're not going anywhere" before shooting Flowers. Tr. Vol. II p. 130. Young's version of events was that he stumbled on the curb and merely touched Flowers's backpack, at which point Flowers turned and came toward Young,

frightening Young and causing him to shoot for fear of his safety. Flowers died from the gunshot.

[7] When searching Flowers's backpack and clothing thereafter, police did not find a $50 bill. They did find, among other items, several Bibles. During Young's interview with police, there was a reference to Flowers being a "thug," though an officer prompted that reference. Ex. 37. Young also discussed his service in Vietnam and said, "I learned to shoot those mother***ers that didn't look like me." *Id.*

[8] The State charged Young with murder. Prior to trial, Young filed a motion in limine to prohibit the State from introducing evidence that when he was killed, Flowers had Bibles in his possession and introducing pictures of his shoes, which had citations to Bible verses written on them. The trial court denied the motion and allowed the State to introduce this evidence at trial over objection.

[9] During opening argument, the prosecutor stated in part:

> Karla told him that it had been a black man, a black man wearing a red shirt, very few details. She said if you're so fired up about this, let's call the police. The defendant said, no, let me find him first. So then he began the hunt. . . . Markest Flowers just happened to be the first black man he saw that day and so he approached him.

Tr. Vol. II p. 18.

[10] During closing argument, while a picture of Flowers was projected, the prosecutor stated:

Ladies and gentleman, that is Markest Flowers. That's where he stood. Murder. In the State of Indiana you cannot knowingly kill someone. It's against the law. It's called murder. And it's a crime. This is what it looks like in real life. It's hard to watch, hard to see. That's the thug right there. That is the thug that was gunned down by this man in cold blood. This is what it sounds like. This is what it looks like.

Tr. Vol. III p. 161.

[11] On rebuttal argument, the prosecutor stated:

What does he tell Mr. Young (sic) when he was in the service that [defense counsel] made such a big deal about. He said I learned to shoot those mother f***ers that didn't look like me. Gosh, I hate these new rules of engagement where you have to see the weapon. That's what he said. He thinks this is the old west where you can just shoot anyone just based on if you think they are dirty. That's what he said Markest was or not. You can determine if they look thuggish or not. That's not how self-defense works.

*Id.* at 205.

[12] The jury rejected Young's claim of self-defense and found him guilty as charged. The trial court entered judgment of conviction and sentenced him accordingly. Young now appeals.

# Analysis

## *I. Introduction of Evidence*

[13]     Young first challenges the trial court's admission of evidence that Flowers had several Bibles in his possession and citations to Bible verses written on his shoes when he was killed.  We will reverse a conviction based on an evidentiary ruling only if the ruling was an abuse of discretion and the resulting error was prejudicial to the defendant.  *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015).  "A trial court abuses its discretion when its ruling is either clearly against the logic and effect of the facts and circumstances before the court, or when the court misinterprets the law."  *Id.*  In determining the prejudicial effect of an alleged evidentiary ruling, "'we assess the probable impact the evidence had upon the jury in light of all of the other evidence that was properly presented.'"  *Id.* (quoting *Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014)).  "If the conviction is properly supported by other independent evidence of guilt, the error is harmless."  *Id.*

[14]     Young does not cite which evidentiary rule the introduction of this evidence supposedly violated.  He refers to Indiana Evidence Rule 402(a)(2)(B), which provides:  "subject to the limitations in Rule 412, a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it . . . ."  However, introduction into evidence of a victim's reputation for violence and prior violent acts and threats, in relation to a self-defense claim, requires some proof that the defendant knew of that reputation.  *Brand v. State*, 766 N.E.2d 772, 780 (Ind. Ct. App. 2002),

*trans. denied*. There is no evidence Young knew Flowers at all prior to the fatal confrontation. Regardless, Young claims Flowers had a criminal history that he was not allowed to refer to during trial but that the State was able to suggest Flowers was a peaceable person because he was religious.

[15] The pertinent evidence rule here appears to be Rule 403, which provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Ind. Evidence Rule 401. Because all relevant evidence is necessarily prejudicial in a criminal prosecution, "unfair" prejudice refers to the potential for a jury to substantially overestimate the value of the evidence, or its potential to arouse or inflame the passions or sympathies of the jury. *Bowman v. State*, 73 N.E.3d 731, 734-35 (Ind. Ct. App. 2017), *trans. denied*. "Evaluation of whether the probative value of an evidentiary matter is substantially outweighed by the danger of unfair prejudice is a discretionary task best performed by the trial court." *Bryant v. State*, 984 N.E.2d 240, 249 (Ind. Ct. App. 2013), *trans. denied*.

[16] The State posited that the Bibles had relevance because they were part of what was recovered from Flowers's clothing and backpack after the shooting, and which did not include the $50 bill stolen from Beachy-Wedge. Indeed, the State displayed all the items recovered from Flowers, not just the Bibles. The shoes

themselves also were claimed to be relevant because they could have been another location where a $50 bill could have been hidden, but it was not found in them. The State also wanted to introduce the shoes as evidence of Flowers's appearance when he was shot; it also introduced his pants into evidence for that reason.

[17] Thus, the Bibles and shoes had some relevance to the question of whether Flowers's actually had stolen $50 from Beachy-Wedge and was indeed the robber Young had been searching for. The shoes might have had some additional relevance, although marginal in our view, regarding Flowers's appearance—i.e., did he match Beachy-Wedge's description of the robber and did he appear threatening to Young or would he so appear to a reasonable person?

[18] As for any unfair prejudice associated with the Bibles and shoes, the State did not make any attempt to argue to the jury that they indicated good or peaceable character on Flowers's part. Instead, the State in its arguments focused on the multiple eyewitness accounts of the shooting and how they were inconsistent with the requirements of a self-defense claim, and noted that Young's own testimony that he was fearful when he shot Flowers did not mean that a reasonable person would have felt so and that his use of force was not proportionate to the situation. In sum, we conclude the trial court was well within its discretion in balancing the probative value and potential for unfair prejudice of this evidence and concluding that it was admissible.

[19]     In any event, it appears to us that even if erroneously admitted, this evidence was harmless. "A claim of self-defense requires a defendant to have acted without fault, been in a place where he or she had a right to be, and been in reasonable fear or apprehension of bodily harm." *Weedman v. State*, 21 N.E.3d 873, 891-92 (Ind. Ct. App. 2014), *trans. denied*. However, when a party uses deadly force, he or she must reasonably believe such force was necessary to prevent the infliction of serious bodily injury. Ind. Code § 35-41-3-2(c). "[T]he Indiana self-defense statute requires both a subjective belief that force was necessary to prevent serious bodily injury and that a reasonable person under the circumstances would have such an actual belief." *Washington v. State*, 997 N.E.2d 342, 349 (Ind. 2013). Even if the use of force is justified, it must be proportionate to the situation and cannot be more than is reasonably necessary under the circumstances. *Weedman*, 21 N.E.3d at 892.

[20]     By Young's own account, he approached Flowers and accused him of committing a crime, then continued following Flowers and questioning him when Flowers did not admit to the robbery and attempted to walk away from the situation. Although Young claimed Flowers was threatening him, Flowers never displayed a weapon of any kind, and none was found on him. Young then shot Flowers at close range in the face when Flowers turned to Young and allegedly began to approach him. Several eyewitnesses—who did not know of Flowers's possession of Bibles or Bible verses on his shoes—testified that Young clearly was the aggressor in the situation and that Flowers only turned to face Young after Young pulled on Flowers's backpack. One of the witnesses heard

Young say, "you're not going anywhere" before shooting Flowers. Tr. Vol. II p. 130. Even ignoring the witnesses' testimony, however, there is substantial evidence that Young used force that was grossly disproportionate to the situation and objectively unreasonable and that Young was the instigator of the incident and continued it after Flowers attempted to disengage from it. In light of all the evidence in this case, the introduction of the Bibles and Flowers's shoes with Bible verses on them likely had very little impact on the jury and was at most harmless error, if error at all.

## II. Prosecutorial Misconduct

Next, Young claims the prosecutor committed misconduct when he repeatedly referred to Flowers as a black man and when he said Young intended to "hunt" for a black man, implied that Young thought Flowers was a "thug," and suggested that Young was inclined to shoot Flowers because Flowers did not look like him. In reviewing a claim of prosecutorial misconduct that has been properly preserved, we determine (1) whether misconduct occurred, and if so, (2) "'whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected'" otherwise. *Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012) (quoting *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006)). A prosecutor has the duty to present persuasive argument to the jury and thus placing a defendant in grave peril, by itself, is not misconduct. *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014). "'Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of

peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct.'" *Id.* (quoting *Cooper*, 854 N.E.2d at 835). To preserve a prosecutorial misconduct claim, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial. *Id.*

[22] Here, Young did not object to any part of the prosecutor's opening or closing arguments. His claim of prosecutorial misconduct is waived. *See id.* As such, Young must establish the existence of not only the elements of prosecutorial misconduct but also that such misconduct constituted fundamental error. *See id.* at 668. To establish fundamental error, a defendant must show that the trial court erred in not sua sponte raising the issue because the alleged error or errors "'constitute clearly blatant violations of basic and elementary principles of due process'" and "'present an undeniable and substantial potential for harm.'" *Id.* (quoting *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002)). In evaluating whether fundamental error occurred, we must consider the alleged misconduct in the context of all that happened and all relevant information given to the jury—including evidence admitted at trial, closing argument, and jury instructions—to determine whether the misconduct had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible. *Id.* "Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been

procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error." *Id.*

[23]    Young contends the prosecutor improperly interjected the issue of race into the trial by referring to Young—a white man—"hunting" a black man whom he considered a "thug" and different from him. We see nothing in the prosecutor's opening and closing arguments that approaches the level of fundamental error. The prosecutor was correctly summarizing and describing the evidence to the jury—the fact that Young took it upon himself to act as a vigilante and seek his friend's robber based on her vague description of a black man in a red shirt, and Young's confrontation with the first black man he saw who met that description. The prosecutor may have taken some slight liberties with respect to implying that Young thought Flowers looked like a "thug" and that he shot Flowers because Flowers looked different from him. However, the prosecutor was extrapolating from what Young discussed with police officers during his interview, which had been introduced into evidence. All in all, it appears the prosecutor's challenged statements were merely permissible comments upon the evidence. *See Ramsey v. State*, 853 N.E.2d 491, 501 (Ind. Ct. App. 2006), *trans. denied*. Certainly, we see nothing so egregious in these comments that would have fundamentally and negatively impacted Young's right to a fair trial.

## Conclusion

[24]    The trial court did not abuse its discretion in allowing the State to present evidence that Flowers had Bibles in his possession and citations to Bible verses written on his shoes when he was killed; even if it did err, any such error would

have been harmless. Also, the prosecutor did not commit fundamentally erroneous misconduct in his arguments to the jury. We affirm Young's conviction.

[25] Affirmed.

Vaidik, C.J., and Pyle, J. concur.