## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 04 2020, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Thomas Andrew Lybrook,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 4, 2020

Court of Appeals Case No.
20A-CR-537

Appeal from the Tippecanoe
Circuit Court

The Honorable Sean M. Persin,
Judge

Trial Court Cause No.
79C01-1804-F1-4

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Thomas A. Lybrook (Lybrook), appeals his conviction for two Counts of child molesting, Level 1 felonies, Ind. Code § 35-42-4-3(a).

We affirm.

# ISSUE

Lybrook presents this court with one issue on appeal, which we restate as: Whether the trial court abused its discretion by excluding character evidence of the child victim.

# FACTS AND PROCEDURAL HISTORY

In March of 2015, William Galeener (Galeener) and his girlfriend, Michelle Phebus got custody of Galeener's granddaughters, M.B, then approximately five years old, and C.B. In July 2016, Galeener offered Lybrook, whom he had known for about thirty years, a job to do some construction work. In the later part of 2017, Lybrook began babysitting M.B. and C.B., either at Galeener's home or at his trailer depending on whether Lybrook's own child was staying with him.

When Lybrook was babysitting M.B. at his trailer, the two of them would go into Lybrook's bedroom and close the door. Lybrook would "pull down his pants and force [M.B.] to pull down [her] pants." (Transcript Vol. II, p. 42). M.B. saw Lybrook's "private part" and indicated that "he can like make it where it's like hard and soft by doing something." (Tr. Vol. II, p. 43). M.B.

described that Lybrook touched "[d]own where my private was, my front one" with his penis "inside" and that it "hurt really bad." (Tr. Vol. II, p. 43). While M.B. was unable to recall how many times these incidents happened, she affirmed that it happened more than once. M.B. also recalled a time when Lybrook "took his private part, his private part that he goes number one with and he took it and put in where I go number two." (Tr. Vol. II, p. 60). She described Lybrook's penis penetrating her anus and the subsequent pain. M.B. related that Lybook touched the "top" of her vagina with a "pink oval toy thingy." (Tr. Vol. II, p. 44). She described the toy as having three buttons that made it vibrate at different speeds and that "it ma[de] like a bee sound." (Tr. Vol. II, p. 45). Lybrook's son remembered that M.B. and Lybrook had conversations in Lybrook's bedroom with the door closed on approximately five different times.

[6] On April 10, 2018, Galeener was contacted by M.B.'s elementary school. A sexual assault examination revealed a detectable amount of male DNA present, but not enough to identify the source of the DNA. DNA deposited via touch or in the anus remains viable for 24 hours, while DNA deposited in the vagina remains viable for up to 72 hours. Lybrook had last babysat M.B. between April 6 and April 8, 2018.

[7] On April 17, 2018, the State filed an Information, charging Lybrook with five Counts of Level 1 felony child molesting. On January 13, 2020, Lybrook waived his right to a jury trial. Two days later, on January 15, 2020, the trial court conducted a bench trial. During the bench trial, Lybrook called Galeener

during his case-in-chief. Lybrook inquired whether Galeener had "any concerns about the credibility of the accusations." (Tr. Vol. II, p. 205). The State objected and Lybrook's counsel explained that she was attempting to question Galeener about his prior statements. The trial court allowed her to rephrase the question. Upon rephrasing, Lybrook's counsel asked, "Did you ever report to law enforcement that you had concerns about the credibility of the statements made by M.B.?" (Tr. Vol. II, p. 206). The State renewed its objection because of its improper character as it called for a specific instance of dishonesty. Again, the trial court found the question to be impermissible but allowed Lybrook's counsel to rephrase. Lybrook then questioned whether Galeener, during the time M.B. had lived with him, had ever caught M.B. in a lie. The State again objected on the same grounds. Finding that Lybrook was not conducting cross-examination of Galeener, the trial court concluded that the question was impermissible under the purview of Indiana Evidence Rule 608(b).

[8] At the conclusion of the evidence, the trial court found Lybrook guilty of two Counts of Level 1 child molesting. On February 21, 2020, the trial court conducted a sentencing hearing, at the close of which, it sentenced Lybrook to an aggregate term of forty years.

[9] Lybrook now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

[10] Lybrook contends that the trial court abused its discretion when it prevented him from inquiring into M.B.'s credibility and reputation for truthfulness pursuant to Indiana Evidence Rule 608. The trial court has inherent discretionary power over the admission of evidence, and its decisions are reviewed only for an abuse of that discretion. *Bowman v. State*, 73 N.E.3d 731, 734 (Ind. Ct. App. 2017), *trans. denied*. Accordingly, we will reverse the trial court's decision only when it is clearly against the facts and circumstances before the court. *Id*. A trial court's decision will be affirmed on any basis apparent in the record, whether or not relied on by the trial court. *Jeter v. State*, 888 N.E.2d 1257, 1267 (Ind. 2008).

[11] While three specific Rules of Evidence address character evidence in trial proceedings—Evidence Rule 404(a), 405(a), and 608—Lybrook's argument solely focuses on the application of Indiana Rule of Evidence 608, which provides that:

> (a) Reputation or Opinion Evidence. A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.
>
> (b) Specific Instances of Conduct. Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in

order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of another witness whose character the witness being cross-examined has testified about.

[12] In *Jacobs v. State*, 22 N.E.3d 1286 (Ind. 2015), our supreme court was faced with the cross-examination of a witness concerning the credibility for truthfulness of the child victim of criminal deviate conduct. On at least three occasions during cross-examination, defense counsel attempted to elicit from the child's mother testimony about specific instances of the child not being truthful. *Id*. at 1288. One instance involved alleged behavioral problems the child was experiencing which resulted in him no longer living with his father, another involved whether the child told his mother that he was attending school when allegedly he was not, and in a third instance counsel sought additional "specific examples" of lies that the child may have told his mother. *Id*. Our supreme court noted that because Jacobs attempted to delve into specific instances of the child's truthfulness, the testimony was prohibited under Evidence Rule 608. *See also Beaty v. State*, 856 N.E.2d 1264, 1269 (Ind. Ct. App. 2006) ("Indiana cases have consistently held that Evidence Rule 608(b) prohibits the introduction of evidence regarding specific instances of misconduct."), *trans. denied*

[13] Likewise, here, Lybrook attempted to inquire about specific instances of M.B.'s truthfulness when he questioned whether Galeener had informed law enforcement about the credibility of the statements. Although not explicitly

connected to the instances of child molest, by referring to law enforcement, Lybrook clearly focused on M.B.'s truthfulness about her specific accusations, which is prohibited under Evidence Rule 608. We reach a similar result with regards to Lybrook's question if Galeener had ever caught M.B. in a lie, as it asked for specific examples of untruthfulness.

[14] Even if we characterize Lybrook's questioning of Galeener as to whether he had ever caught M.B. in a lie during the time M.B. had lived with him as a general question without eliciting specific examples, we must conclude that the testimony is prohibited pursuant to Evidence Rule 608(b) as Galeener was called in Lybrook's case-in-chief and was not testifying on cross-examination. Accordingly, the trial court did not abuse its discretion in excluding the improper character evidence.

## CONCLUSION

[15] Based on the foregoing, we conclude that the trial court properly excluded testimony about the child victim's reputation for truthfulness.

[16] Affirmed.

[17] May, J. and Altice, J. concur